IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.                                         Case Nos.:  5:16cr17/RH/EMT
                                                        5:18cv174/RH/EMT

MICHAEL JOSEPH WARD

## REPORT AND RECOMMENDATION

This matter is before the court on Defendant Michael Joseph Ward's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 81).   The Government responded in opposition, and Ward filed a reply (ECF Nos. 84, 87).   The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.   *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b).   After a review of the record and the arguments presented, it is the opinion of the undersigned that Ward has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.   *See* Rules 8(a) and (b), Rules Governing Section 2255 Proceedings.

## PROCEDURAL BACKGROUND

Michael Joseph Ward was charged in a three-count indictment with possession with the intent to distribute marijuana, cocaine base, fentanyl,

methamphetamine, morphine, buprenorphine, diazepam, and heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 841(b)(1)(D), 841(b)(1)(E), and 841(B)(2) (Count 1); possession of multiple firearms in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 2); and possession of multiple firearms and ammunition by a person previously convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 3) (ECF No. 1).

Ward filed a motion to suppress narcotics and firearms seized during a search of his car (ECF No. 17), and the Government filed a response in opposition (ECF No. 22). The district court conducted a two-day suppression hearing and denied Ward's motion (ECF Nos. 28, 68, 69). Ward then proceeded to a jury trial and was found guilty on all counts as charged (ECF Nos. 46, 70, 71). As to Count One, the jury returned a special verdict finding unanimously that Ward possessed with intent to distribute "crack cocaine, fentanyl, methamphetamine, or morphine" (ECF No. 46). The jury did not make a finding as to quantity, as there is no threshold drug quantity required to support a conviction under § 841(b)(1)(C).

The Presentence Investigation Report ("PSR") grouped Counts One and Three for sentencing purposes (ECF No. 52, PSR ¶ 21). Ward's base offense level under U.S.S.G. § 2K2.1, the guideline provision for his most serious offense, was 14 (ECF No. 52, PSR ¶¶ 21–24). Two points were added for the number of firearms and for

obstruction of justice; Ward did not receive a reduction for acceptance of responsibility (*id.*, PSR ¶¶ 25, 28, 31, 32).   With a total offense level of 18 and a Criminal History Category of IV, Ward's guideline imprisonment range for Counts One and Three was 41 to 51 months, with an additional mandatory 60-month consecutive term as to Count Two (PSR ¶ 98).   Ward was sentenced at the low end of the guidelines to 41 months of imprisonment on Counts One and Three, to run concurrently, followed by the mandatory consecutive 60-months imprisonment on Count Two (ECF Nos. 55, 56, 73).

Ward appealed and challenged the denial of the motion to suppress, the criminal history calculation, and the application of the offense level adjustments for the number of firearms and obstruction of justice (ECF No. 78).   The Eleventh Circuit affirmed Ward's conviction and sentence on January 16, 2018.   He timely filed the instant 28 U.S.C. § 2255 petition pursuant to the prison mailbox rule on July 27, 2018 (ECF No. 81).

## STATEMENT OF RELEVANT FACTS[1]

### A. The Offense Conduct

---

[1] The facts set forth in this section are taken from the PSR (ECF No. 52), the Government's brief on appeal (ECF No. 84, Att. A at 14–18), and the Eleventh Circuit's opinion (ECF No. 78).

On February 4, 2016, members of the United States Marshals Florida Regional Fugitive Task Force arrested Michael Ward on a state warrant for failure to appear in two separate cases.    Law enforcement had procured a search warrant and were able to locate Ward using a cell-site simulator.    When they attempted to arrest Ward outside a business establishment, he fled on foot.    During an ensuing struggle, Ward reached for a handgun he was carrying in a small black case, although at the time he was reaching law enforcement could not see the handgun in the case. Officers yelled for Ward to show them his hands, and when he failed to comply they deployed Tasers to subdue and arrest him.    Incident to the arrest, law enforcement located keys (one of which unlocked Ward's car) and the small black case/pouch that contained a loaded .25 caliber handgun.

At least two officers smelled the odor of fresh marijuana emanating from Ward's car, a Ford Taurus.    Officers searched the car and seized "hydroponic marijuana," which was described at trial as "extremely pungent" (ECF No. 69 at 43). They also seized a safe from the trunk and five additional handguns, ammunition, approximately $6,700 in cash, approximately 31.8 grams of marijuana packaged in multiple bags, hypodermic needles, methamphetamine, crack cocaine, three fentanyl

patches, liquid morphine, and various pills including morphine, diazepam, and buprenorphine.[2]

## B. Facts Related to Obstruction

After Ward's arrest on February 4, 2016, but before he was indicted on June 21, 2016, Ward engaged in numerous actions the Government characterized as obstruction of justice, over and above his act of fleeing and struggling with the arresting officers on February 4.    These efforts involved Ward's attempts to influence the actions of his brother, John Ward.    As discussed more fully *infra*, Ward encouraged his brother to lie to law enforcement or not cooperate with them. He also tried to bribe his brother to change his story, instructed him to invoke his right to remain silent and not reveal that he knew Ward was an armed drug dealer, and threatened his brother so he would not cooperate with the police and would not testify against Ward (ECF No. 84-1 at 56–60).

At trial, the Government presented evidence of the following acts to establish multiple instances of obstructive conduct, and later argued at sentencing that these acts supported an obstruction of justice enhancement:

Ward called his brother on February 4, 2016, and instructed him to lie to the police.   Specifically, Ward told his brother John Ward to tell the

---

[2] The marijuana equivalent of the controlled substances was 17.8 kilograms (ECF No. 52, PSR ¶ 15).

police "that you loaned it [the Ford Taurus] to me a few weeks ago, or whatever." John Ward testified, however, that Ward had possession of the Ford Taurus since around January 2015, and not merely a few weeks before he was arrested. Later in the call, Ward told John Ward: "Don't answer any questions and say that you don't know anything about it [the Ford Taurus]" (ECF No. 84-1 at 59);

Ward called his brother on February 17, 2016, and attempted to convey what John Ward should tell the police regarding the items seized from the Ford Taurus. Ward stated: "They [the police] found some stuff [the narcotics and firearms] in your car. I guess they're trying to pin it on me" (ECF No. 84-1 at 60.);

Ward called his brother on March 1, 2016, and told him that, while he (Ward) would not hurt members of his family, he (Ward) was "affiliated with a conglomerate that is not making money" because Ward was in jail, and that he could not predict what this conglomerate might do (ECF No. 84-1 at 60–61.);

In a letter to his brother dated June 19, 2016, Ward stated, "All I would like you to do, if asked about any involvement with the car, just plead the 5th, ok?" John Ward interpreted this as a command that he not speak with law enforcement agents about the Ford Taurus in which the firearms and narcotics were found, including Ward's possession and use of the Taurus. Ward was not protecting his brother from incriminating himself, he was acting in an effort to protect his own interests (ECF No. 84-1 at 57–58.); and

In the same letter, on page eleven, Ward told his brother: (1)"With your help, I can get the evidence suppressed, and get the $6,700 in seized currency from your car. — I'll give you $2,000 if you help me. And you can do what you want with it . . . . I can and will help you financially when I get over this hump and get back to work"; and (2) that he (Ward) has "the ability to make decent money but I can't do it in here [jail]." Ward thus indicated to John Ward that he would pay him only if he testified falsely and if that testimony resulted in Ward's freedom. (ECF No. 84-1 at 58.)

At sentencing, the district court agreed with the Government's position that the obstruction enhancement was warranted (ECF No. 73 at 19–20). The court stated that had Ward simply told his brother he did not have to talk to the FBI the enhancement would not have been applied, but Ward's actions went well beyond that (*id.* at 20). The court found Ward suggested to his brother that he give false information, that he might benefit financially by withholding information or giving false information, and that it might threaten his safety to tell the truth (*id.,* at 20–21).

### C.   Plea Discussions

During the sentencing proceeding, the court asked Ward if he would like to make a statement (ECF No. 73 at 55–56). In response, Ward claimed he was not given the "opportunity to accept responsibility and preserve certain incidents of misconduct and illegalities by law enforcement" or "the opportunity to preserve for evidence [sic] and for appeal" (*id.* at 56).

The court then asked counsel whether the Government had precluded the possibility of a conditional plea, noting it would cast the case in a different light if that possibility had been foreclosed (ECF No. 73 at 56, 57). Defense counsel explained that the possibility had been discussed, but "by the time we had gotten

to the point through that [suppression] hearing that that was not something that was available that we intended to pursue" (*id.* at 56).   Government counsel clarified that the Government had not offered a conditional plea, but it was his understanding that Ward was not interested in a conditional plea, and he assured the court that the Government had never said that Ward would have to waive his Fourth Amendment issues if he pleaded guilty (*id.* at 57).   Defense counsel added that the possibility of a plea may have been available before the two suppression hearings, but according to Defendant's recollection, credit for acceptance of responsibility was no longer available after the second suppression hearing (*id.* at 58).   The court commented that the award for acceptance of responsibly was up to the court, not the Government (*id.* at 59).

While arguing for an appropriate sentence, the Government's counsel cited Ward's long criminal history and lack of respect for the law (ECF No. 73 at 60–61).   The Government argued Ward still had not taken responsibility for his actions, and in light of this, it did not believe Ward would have pleaded guilty at any point (*id.* at 61).   It also noted that Ward obstructed justice from the beginning when he ran from the police, then by trying to get his brother to change his story, and it continued until trial (*id.*).

## ANALYSIS

Case Nos.: 5:16cr17/RH/EMT; 5:18cv174/RH/EMT

## A. Underline{General Standard of Review}

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing." *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014). A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a § 2255 motion which have been resolved on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th

Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).   Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under § 2255.   *Nyhuis*, 211 F.3d at 1343 (quotation omitted).

Issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).   Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been raised on direct appeal.   *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000).   In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.

*Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. "[T]he fact that a particular defense ultimately proved

to be unsuccessful [does not] demonstrate ineffectiveness." *Chandler*, 218 F.3d at 1314. When reviewing the performance of experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger because "[e]xperience is due some respect." *Id.*, 218 F.3d at 1316, n.18.

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (*quoting Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (*quoting Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531

U.S. 198, 203–04 (2001).    A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."    *Id.* at 203.

To establish ineffective assistance, a defendant must provide factual support for his contentions regarding counsel's performance.    *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).    Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.    *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim.    *Hollis v. United States,* 958 F. 3d 1120, 1124 (11th Cir. 2020) (counsel not constitutionally ineffective for failing to raise meritless objection to use of prior drug convictions as predicate offenses under ACCA).    This is true regardless of whether the issue is a trial or sentencing issue.    *See, e.g.*, *Sneed v. Florida Dep't of Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel); *Lattimore v.*

*United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (*quoting Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is

abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.    A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).    Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.    *Gordon*, 518 F.3d at 1301 (*citing Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).    To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.    *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).    A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir.

2004).    Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.    *Lynn*, 365 F.3d at 1239.    Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

### B. <u>Ward's Claims for Relief</u>[3]

### 1. Ground One—Counsel's Pretrial Sentencing Advice

Ward claims his attorney misadvised him prior to trial about the sentence he would likely receive and that he would have pleaded guilty had he been properly advised.    More specifically, he alleges counsel miscalculated the sentencing guidelines and advised him that because his sentencing exposure was more than ten years "it did not make much of a difference of whether he pleaded guilty or proceeded to trial" (ECF No. 81 at 17–18).    He claims counsel said the "only difference" between pleading or going to trial was "17 to 19 months."    He also maintains that by pleading guilty he would have received a three-level reduction for acceptance of responsibility and "could have urged the Government to partially dismiss at least one of the firearm counts, thereby dramatically reducing his sentence" (*id*.).

---

[3] Ward submitted what purports to be an affidavit (ECF No. 81-1 at 3–4).    The document is neither signed nor dated and as such the court does not afford it any weight.    Even if it were in proper form and considered, it would not change the court's recommendation with respect to any of any of the issues raised in this motion.

In support of his claim, Ward submitted a lengthy and detailed letter from his trial counsel, dated July 26, 2016, in which she advised Ward of the maximum penalties he faced and provided Ward with an "estimate" of his guidelines range (ECF No. 87 at 17–22).    Counsel noted that the sentencing court was not required to follow the guidelines but must consider them.    She then explained how the guidelines work, identifying the relevant guidelines provisions and pointing to enhancements that might apply—for example, based on the number of firearms involved and obstruction of justice (*id.*).    She also explained the concept of "grouping" offenses and converting drug weights to a marijuana equivalency, noting, correctly, that the guidelines analysis was complicated in this case.    She noted possible bases on which the Government could seek a higher sentence (e.g., under-represented criminal history) and the possibility that he could be classified as an armed career criminal or career offender.    She also noted possible bases for a lower sentence, such as acceptance of responsibility or cooperation.    Counsel emphasized that the guidelines turned in part on Ward's criminal history, and she noted that any convictions of which she was unaware could increase the guidelines range.

She then calculated Ward's guidelines range and estimated that he had a total offense level of 24 and a criminal history of III and thus faced 123–138 months if he

went to trial, or 106–117 months if he pleaded guilty *and* received an acceptance

reduction, based on a lower total offense level of 21[4] (*see* ECF No. 87 at 19).    She

noted that if Ward engaged in criminal conduct while in jail, he would not receive

an acceptance reduction (*id.* at 22).    She concluded her seven-page letter as follows:

> **It is important to know that I cannot guarantee my estimate**.
> I, just like any other lawyer, could make an error in the calculations,
> can misread a section of the Guidelines, or can miss a section all
> together.    It is possible, too, that there is additional information I am
> unaware of that could alter the calculations. . . . . Your case is especially
> complicated because guns and drugs are both involved.    If the judge's
> interpretation of the Guidelines differs from mine, it is his interpretation
> that will carry the day.    **There is also no guarantee that the judge
> will impose a sentence in my estimated range**.

(ECF No. 87 at 22) (bold and underline in original).

As noted above, the district court determined at sentencing that Ward's

total offense level was 18 and his Criminal History Category was IV, with an

imprisonment range of 41 to 51 months on Counts One and Three, plus the

mandatory 60-month consecutive term as to Count Two (a total of 101 to 111

months) (PSR ¶ 98).

---

[4] As counsel explained in her letter, these ranges reflect the corresponding guidelines range
plus the mandatory consecutive 60-month sentence on Count Two (63–78 + 60 months (trial) or
46–57 + 60 months (plea, *if awarded* an acceptance reduction)); they also reflect a difference of
17 to 21 months, not 17 to 19 as Ward claims (*see* ECF No. 87 at 19).

Although counsel overestimated Ward's total offense level [5] and underestimated his criminal history, she did not perform ineffectively under *Strickland*.   She fully advised Ward of the consequences of his plea, including the maximum penalties he faced.   She made it perfectly clear that the guidelines analysis was complicated in Ward's case, due in part to the number and nature of the various drugs involved and because the case involved both drugs and firearms that required grouping, and that *her* estimate was just that—an estimate, not a promise. She informed Ward she could be missing certain information that impacted the analysis, and she explained that the guidelines were advisory in any event and the sentence would be up to the judge.   She also specifically discussed the *possibility* of a lesser sentence if Ward pleaded guilty instead of proceeded to trial but cautioned that an acceptance of responsibility reduction might not be awarded if, for example, Ward engaged in further criminal conduct while in jail (ECF No. 87 at 22).   After having been so informed, Ward elected to go to trial.

Although Ward now asserts he would have pleaded guilty had his trial counsel accurately estimated the guidelines range, the assertion is conclusory, and he has not

---

[5] Counsel based her estimate on the assumption that Ward's 1994 (vehicular) manslaughter conviction (PSR ¶ 55) would be considered a crime of violence under § 2K2.1(4) and provide for a base offense level of 20 instead of 14 (ECF No. 87 at 18).

shown that counsel's *estimation* had any effect on the sentence.    First, had Ward elected to plead guilty, application of the acceptance of responsibility adjustment was not a given.    A defendant who pleads guilty is not entitled to the acceptance of responsibility adjustment as a matter of right.    *See* U.S.S.G. § 3E1.1, comment. (n.3).    And here, Ward received a solidly-supported adjustment for obstruction of justice based on conduct occurring well before trial (ECF No. 73 at 19–21; ECF No. 78 at 28–30).    Only in rare cases will a defendant receive adjustments for both obstruction and acceptance of responsibility (*see* U.S.S.G. § 3E1.1, comment (n.4)), so Ward likely would have gained little benefit, if any, by pleading guilty.

Ward also claims he "presumably could have received an even shorter sentence" had counsel negotiated with the Government "not to impose some of the enhancements that were imposed on him for proceeding to trial" and "presumably could have asked the government to dismiss some of the counts, as it generally occurs when defendants enter guilty pleas" (ECF No. 81 at 23).    Ward provides no factual or legal support for his "presumptions," and the Government counters that such scenarios are "highly unlikely" and that "firearm charges are rarely dismissed, if ever, absent extraordinary circumstances" (ECF No. 84 at 18).    What is more, it is the court that "imposes" sentencing enhancements, not the Government, so Government cannot "negotiate away" an applicable sentencing enhancement.    In

any event, the sentencing enhancements here were not based on factors related to Ward's *trial*, but instead on obstructive conduct that occurred before trial and on the number of firearms involved in the offenses—factors that applied regardless of whether Ward pleaded guilty or proceeded to trial.

Accordingly, even *if* this court found trial counsel's performance ineffective, Ward's claim still fails because he cannot show prejudice.    A defendant who claims ineffective advice led him to reject a plea offer must show that but for ineffective assistance of counsel, he would have accepted the plea and the conviction or sentence, or both, under the terms of the plea offer would have been less severe than under the judgment and sentence imposed.    *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).    A defendant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish" prejudice.    *Pericles v. United States*, 567 F. App'x 776, 782 (11th Cir. 2014) (*quoting Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991)); *Rosin v. United States*, 786 F.3d 873 (11th Cir. 2015).    Ward has not established he would have entered a plea had counsel accurately estimated his precise guidelines range or that his sentence would have been less severe had he

not proceeded to trial.[6]    Ward thus has failed to satisfy both prongs of the *Strickland* standard, and he is not entitled to relief on this claim.

### 2.  Ground Two—Request for Special Verdict Form

Ward next contends counsel was constitutionally ineffective because she did not request that the court instruct the jury to make a specific finding regarding the quantity and type of the eight controlled substances listed in the indictment (ECF No. 81 at 24).   He also asserts that absent a specific drug weight finding, he faced a maximum of one year of imprisonment (*id.*).   He is mistaken on multiple fronts. First, counsel's performance was not constitutionally deficient because she *did* make the objection Ward now puts forth.    Second, Ward was not prejudiced because even if his counsel's argument had been successful, it would not have changed the outcome of the case given the jury's factual findings.    Finally, the jury did make a specific finding narrowing down the type of drugs involved.

On the first day of trial, the court discussed the jury instructions with counsel (ECF No. 70 at 77–82).   Ward's counsel asked if the court intended to articulate each drug and each firearm separately on the verdict form (*id.* at 78).    With respect to the drugs, the court expressed its inclination to list the drugs with the highest

---

[6] The on-record discussions about whether a conditional plea was offered (or foreclosed), above, do not establish that Ward wished to enter a guilty plea.

penalty first on the verdict form.    Therefore, the jurors would first need to decide whether they unanimously found the offense involved cocaine, methamphetamine, heroin, morphine, or fentanyl (*id.*).    If so, additional questions about the drugs with lower statutory maximum penalties would be superfluous.    An affirmative finding as to any substance on the first list of drugs would establish the maximum penalty of twenty years under § 841(b)(1)(C); other substances in the minimal quantities involved in this case carried lower penalties under §§ 841(b)(1)(D) and (E). Ward's attorney nonetheless urged the court to include all the listed drugs separately on the verdict form to avoid juror confusion (*id.* at 80–81).    The court stated there was no reason for the jury to consider all of the other drugs if it determined during deliberations that Ward possessed with intent to distribute cocaine (*id.* at 81).

At the end of the first day of trial, the court provided counsel with an updated set of jury instructions.    Ward's attorney again requested that the court amend the verdict form to require the jury to make individual findings on each of the drugs charged in the indictment (*id.* at 238, 243–44).    Counsel reiterated her objection on the second day of trial, and the court confirmed that the objection was preserved (ECF No. 71 at 47–48).

The verdict form instructed the jury to first determine whether Ward possessed with intent to distribute one of seven substances—marijuana, crack

cocaine, fentanyl, methamphetamine, morphine, buprenorphine, or diazepam (ECF No. 46 (Question 1)).[7]    If so, the jury next had to decide whether Ward possessed with intent to distribute "crack cocaine, fentanyl, methamphetamine, or morphine" (*id.* at 2 (Question 1(a)).    If so, no further determinations regarding drug type were necessary.    If not, the jury was instructed to determine whether Ward possessed with intent to distribute buprenorphine, an offense to which a ten-year statutory maximum applied (*id.* (Question 1(b)).    If the jury found he had not possessed buprenorphine, no further questions were necessary and the five-year statutory maximum of § 841(a)(1)(D) would de facto apply to the only two remaining substances: marijuana and diazepam.    The jury answered yes to Questions 1 and 1(a), thus finding in pertinent part that Ward possessed with intent to distribute crack cocaine, fentanyl, methamphetamine, or morphine (ECF No. 46).    Because this finding determined the statutory maximum penalty, no further findings were required.

In sum, counsel made repeated requests that the court ask the jury to make a unanimous finding as to each individual drug listed in the indictment.    The court declined to do so, correctly noting that if the jury unanimously found the

---

[7] The verdict form did not include heroin in the list of substances, although heroin was listed in the indictment (ECF No. 1; ECF No. 46).

Government proved beyond a reasonable doubt that Ward possessed with intent to distribute crack cocaine, fentanyl, methamphetamine, or morphine, the twenty-year maximum set forth in § 841(b)(1)(C) would apply.   Although drug quantity is relevant for sentencing, no minimum quantity determination is necessary to support a conviction under this section.   Ward's sentence was well within the statutory maximum and, contrary to his suggestion, there is no violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).[8]   Ward has not established either deficient performance by counsel or prejudice, and thus he has not shown a violation of *Strickland.*

### 3.  Ground Three—Dismissal of Count Two

Ward contends that upon granting him relief on Ground Two of the instant § 2255 motion relating to the verdict form, the court must vacate his conviction on Count Two, possession of a firearm in furtherance of a drug trafficking offense (ECF No. 81 at 35–36).   He claims the jury's failure to find a specific quantity of drugs as to Count One means he was not convicted of a drug trafficking crime (*id.* at 36).

---

[8] "In *Apprendi*, the Supreme Court pronounced that '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'"   *Dohrmann v. United States*, 442 F.3d 1279, 1281 (11th Cir. 2006) (*quoting Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Thus, he asserts, his conviction on Count Two must be vacated, and he should be resentenced to 12 months on Count One and 41 months on Count Three, to run concurrently with each other (*id.*).

The assumptions on which Ward's argument rests—that his conviction on Ground Two must be vacated because he was not found guilty of a drug "trafficking" offense—are faulty. As discussed in the previous section, the jury found Ward guilty of possession *with intent to distribute* crack cocaine, fentanyl, methamphetamine, or morphine in violation of 21 U.S.C. § 841(a)(1)(C), as charged in Count One. Hence, the jury effectively found that Ward engaged in drug trafficking activity, and Ward's conviction for possession of a firearm in furtherance of that offense was proper. *See e.g., United States v. Mercer*, 541 F. 3d 1070, 1076–77 (11th Cir. 2008) (using the terms "drug selling operation" and "drug crime" as synonymous with trafficking for purposes of discussion of § 924(c) (citation omitted)). Ward thus has failed to show a basis for relief in that regard.

Ward asserts in his reply as an alternate basis for relief that the omission of the word "trafficking" from the jury instructions and the verdict form constituted an improper constructive amendment of the indictment (ECF No. 87 at 8–9). A constructive amendment to the indictment "occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for

conviction beyond what is contained in the indictment." *United States v. Sammour*, 816 F. 3d 1328, 1337 (11th Cir. 2016). "Customarily, a constructive amendment occurs because the trial court instructs the jury on an expressly different crime than the one alleged in the indictment." *United States v. Johnson*, 713 F.2d 633, 644 n.12 (11th Cir.1983).

Here, the indictment charged Ward in Count One with "knowingly and intentionally possess[ing] with intent to distribute a controlled substance . . ." and in Count Two with possessing a firearm "in furtherance of a drug trafficking crime . . . that is, possession with intent to distribute a controlled substance, as charged in Count One of this Indictment . . ." (ECF No. 1). The jury was instructed with respect to Count One that Ward must have knowingly possessed one of the drugs listed in the indictment "with the intent to distribute it" (ECF No. 71 at 137). The court further instructed, "To possess a drug with the intent to distribute it means to possess the substance not for personal use, but with the intent to transfer possession to another person." (*id*.). As to Count Two, the jury was instructed that Ward could be found guilty only if he "committed the drug crime charged in Count One" and "knowingly possessed a firearm . . . in furtherance of the drug crime" (*id*. at 138). The jury was also instructed, "A person possesses a firearm in furtherance of a drug crime only if the firearm helps, promotes, or advances the drug crime in some way;

or the person deliberately had the firearm available to help, promote, or advance the drug crime in some way." (*id*.).    Likewise, the verdict form required the jury to find whether Ward was guilty of "possessing a firearm in furtherance of *the drug crime* charged in Count One" (ECF No. 46 at 2; ECF No. 71 at 137–38) (emphasis added).

Although the court referred to the predicate offense necessary to support a conviction on Count Two as a "drug crime," and not a "drug trafficking crime," this did not broaden the possible bases for conviction beyond what is alleged in Ward's indictment.    In instructing the jury as to Count Two, the court made it clear Count One was the predicate drug crime necessary to support a conviction on Count Two and that Ward could be found guilty of Count Two only if the jury concluded Ward committed the drug offense alleged in Count One.    The trial court plainly did not instruct the jury on an expressly different crime than the one alleged in the indictment.    *See Mercer*, 541 F. 3d at 1076–77.    Because no constructive amendment occurred, no basis for relief exits.

## CONCLUSION

An evidentiary hearing is not necessary for this court to resolve Ward's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015).    Additionally, for the foregoing reasons the court finds

Ward has not shown that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.    Therefore, Ward's motion should be denied in its entirety.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" and, if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."    A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.    Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.    28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."    If there is an objection to this recommendation by either party, that party

may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.    That the Motion to Vacate, Set Aside or Correct Sentence (ECF No. 81) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 2<u>nd</u> day of July 2020.


*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.